IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Jason Chapman Joyner, | Civil Action No. 2:12-920-JMC-BHH |
| Plaintiff, | |
| vs. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Defendant. | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Jason Chapman Joyner, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 42 years old on his alleged disability onset date of October 16, 2007. (R. at 15, 20.) The plaintiff claims disability due to left lumbar radiculopathy and carpal tunnel syndrome. (R. at 15, 139.) The plaintiff graduated from high school; he subsequently attended the diesel program at Midlands Technical College for a year and then became a paramedic. (R. at 33.) He has past relevant work as a paramedic. (R. at 20.)

The plaintiff filed an application for DIB on February 25, 2009. (R. at 13.) His application was denied initially and on reconsideration. (R. at 13.) An Administrative Law Judge (ALJ) held a hearing on July 16, 2010. (R. at 13.) In a decision dated August 5, 2010, the ALJ found that the plaintiff was not disabled. (R. at 13-21.) The Appeals Council

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

denied the plaintiff's request for review, (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making her determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)     The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.
>
> (2)     The claimant has not engaged in substantial gainful activity since October 16, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> (3)     The claimant has the following severe impairment: left lumbar radiculopathy (20 CFR 404.1520(c)).
>
> (4)     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5)     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that, as a result of his spinal disorder and accompanying pain, he requires an opportunity to change from a standing to a sitting position at thirty minute intervals and can only occasionally stoop, twist or climb stairs and ramps and cannot crouch, kneel, squat, crawl or climb ladders, ropes or scaffolds. The claimant also is limited to occasional use of his left lower extremity for foot controls.
>
> (6)     The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> (7)     The claimant was born on August 3, 1965 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).
>
> (8)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> (9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from October 16, 2007, through the date of this decision (20 CFR 404.1520(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden

3

of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the

Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) not ascribing controlling weight to the opinions of his treating physician and (2) failing to properly assess his credibility.

The Court will address each alleged error in turn.

**I.     Treating Physician**

The plaintiff first contends that the ALJ improperly rejected the opinions of his treating physician, Dr. Michael J. Bernardo. On May 10, 2010, Dr. Bernardo completed a "Spinal Medical Source Statement." (R. at 361-65.) Dr. Bernardo stated that the plaintiff's pain and other symptoms would "frequently" (34 to 66 percent of an eight-hour workday) interfere with attention and concentration and that his medications caused drowsiness. (R. at 363.) He indicated that the plaintiff could only walk for less than one block without rest or severe pain and sit for 30 minutes and stand for 10 minutes each at one time. *Id.* He stated that the plaintiff needed periods of walking around during an eight-hour workday for 10 to 15 minutes at a time. *Id.* He also stated that the plaintiff needed a job that frequently permitted shifting positions, at will, from sitting, standing, or walking and that he could only occasionally lift and carry up to 10 pounds. *Id.* at 364. He could also never twist or stoop (bend) and rarely crouch/squat and climb ladders and stairs. *Id.* He stated that the plaintiff's impairments or treatment would cause him to be absent from work more than four days per month. He also stated he "d[id] not believe [Plaintiff] was employable with [his] condition at this time" (R. at 361-65.)

The ALJ found that the opinions of Dr. Bernardo were not entitled to significant weight because they were based on the plaintiff's subjective reports of pain and limitation; not based on objective evidence; and inconsistent with the opinions of other physicians. (R. at 19.)

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions.  These are administrative findings reserved for the Commissioner's determination.  SSR 96-2p.  A treating physician's opinion may be assigned little or no weight if it is conclusory. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir.1996).

The first rationale of the ALJ is simply wrong.  While Dr. Bernardo certainly recorded the subjective complaints of the plaintiff, his medical records throughout, and including the questionnaire, contained objective medical data and findings.  In December 2007, Dr. Bernardo examined an MRI scan performed on the plaintiff, as well as conducted a physical examination as part of his assessment. (R. at 267.)  Dr. Bernardo found that the plaintiff presented "with a diagnosis of herniated lumbar disc;" that the "MRI showed Disc Herniation L 4-5, also L5-SI;" and that "[t]he quality of life now since diagnosis is somewhat worse." *Id.*

The plaintiff presented to Dr. Bernardo again, in November 2008, to receive continuing care for lower back pain. (R. at 270.)  For the consultation, the plaintiff brought in an MRI performed on him, in August 2008, which Dr. Bernardo reviewed. *Id.*  Dr. Bernardo reported that the plaintiff complained of discomfort in the lower lumbar spine, as well as persistent stiffness and numbness in the left buttock, left thigh, and left foot. *Id.*  Dr. Bernardo also performed a musculoskeletal examination of the plaintiff and concluded that the plaintiff had "pain with range of motion in: back flexion, extension, and left lateral flexion;

6

left hip flexion, extension, adduction, abduction, internal rotation and external rotation." *Id.* Dr. Bernardo opined that the plaintiff suffered from lumbosacral radiculopathy which "[o]ccurs w/ lifting, standing, sitting for any length of time over 20 minutes. I believe he is unable current employable due to severe symptoms." (R. at 271.)  Dr. Bernardo prescribed Neurotin and recommended that the plaintiff consult with a pain specialist. *Id.*

In both January and March 2009, Dr. Bernardo continued to perform musculoskeletal examinations of the plaintiff and found that the plaintiff was still experiencing pain with range of motion. (R. at 272-75.)

In his Spinal Medical Source Statement, dismissed by the ALJ as unsupported by objective medical findings, Dr. Bernardo cited specifically the MRIs and his own physical examinations.  (R. at 361.)

The defendant does not disagree but instead contends that the ALJ found inconsistencies between Dr. Bernardo's disability opinion and his medical records. The ALJ made some reference to inconsistent findings in Dr. Bernardo's medical notes but ultimately emphasized a want of objective medical findings.  (See R. at 19.)  The above recitation indicates that such a rationale was not based on substantial evidence.

As stated, the ALJ also believed that Dr. Bernardo's opinion was inconsistent with the opinions of other physicians that the plaintiff could perform light work.  The ALJ does not explain himself.  An examination of the record does not make inconsistency among the various opinions obvious.  Indeed their seems to be some consistency. (See R. at 295-97.) Dr. Raymond Sweet's opinion that the plaintiff was restricted to "no repetitive bending, not to lift more than ten pounds or sit in one position for more than 20 minutes" is largely in keeping with Dr. Bernardo's Medical Source Statement. (Compare R. at 297 with R. at 361-65.)   Dr. Sweet further believed that the plaintiff's symptoms and limitations were severe enough to warrant surgery. (R. at 288).  Likewise, Dr. Drye's opinion that the plaintiff should "change positions frequently as much as every 30 minutes" is also consistent with

7

Dr. Bernardo's and Dr. Sweet's assessment of the plaintiff's physical limitations. (R. at 326-28.)

Although the physicians departed some as to their ultimate opinion about the plaintiff's ability to perform work, their functional and physical findings are comparable. For this reason, it is difficult to accept the ALJ's limited treatment of Dr. Bernardo's opinion as somehow obviously inconsistent. The defendant has cited numerous other places where the relative opinions depart. (Def. Brief at 15-18.) The Court could not properly inject its own view other than to say that their exists enough *consistency* that the ALJ needed to say more, such that this Court can make review of the rationale.

Between the plain misstatement concerning whether objective medical evidence was relied upon by Dr. Bernardo and the ALJ's failure to explain better concerning alleged inconsistencies, the case should be remanded for an additional consideration of Dr. Bernardo's opinion. The Court has recently made it a practice to demand a more exacting consideration of the treating physician's view, as the regulations require. They cannot be so readily and routinely disregarded.

## II.     **The Plaintiff's Credibility**

The plaintiff also complains that the ALJ failed to properly assess the credibility of his subjective complaints of pain and other testimony. At the administrative hearing, the plaintiff testified that he suffers from significant pain in his lower back and left side. (R. at 39-40.) The plaintiff testified that "[t]he back pain can be severe" and that "lying down is really the only relief I get from that particular pain." (R. at 40.) The plaintiff further stated that he could only sit for 10 minutes at a time and tried to limit himself to less than one hour of total sitting in an eight-hour day. (R. at 44-45). In regards to standing, the plaintiff testified that he limited himself to standing three to five minutes and could not stand very much in an eight-hour day. (R. at 45.)

The ALJ claimed that the plaintiff's testimony was inconsistent with a prior functional statement, the plaintiff made in January 2010, and the objective medical evidence of record. (R. at 16-19.)

Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id.* at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ." *Id.* at 593. Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lense because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

The plaintiff does not challenge the ALJ's use of this analytical framework. Indeed, the ALJ acknowledged, and made good application of, it. (R. at 18.) He agreed that the plaintiff had made the necessary showing at the first step. *Id.* At step two, however, he

9

found the plaintiff's allegations concerning the severity of symptoms and limitations associated with his impairments not fully credible. *Id.*

To the extent the ALJ found that the objective medical evidence was inconsistent with the degree of symptomology and limitation that the plaintiff alleged (R. at 16-18), the Court has already partially rejected the ALJ's view of the objective evidence. The defendant again emphasizes that the ALJ's finding is supported by the opinions of Drs. Sweet (R. at 283-97), Bethea (R. at 252-53), Richardson (R. at 307-09), Drye (R. at 326-28), and Johnson (R. at 366-67). But, the ALJ's view of these opinions must necessarily be revisited in light of a renewed consideration of Dr. Bernardo's opinion on remand. For this reason alone, the plaintiff's credibility should be reevaluated.

The plaintiff has also complained that the ALJ exaggerated the plaintiff's testimony, from his January 2010 statement, as to daily activities, in a way that made his hearing testimony seem dubious. The Court agrees. The January 2010 statement suggests fairly comparable limitation to that in his hearing and certainly does not read as some confession of significant activity and functionality, in the way the ALJ describes it. (R. at 172.) Quite to the contrary, the statement implies that it takes significant effort to do very little. With respect to any inconsistency between the plaintiff's statements about his ability to sit and stand, the plaintiff, in the January 2010 report, indicated that the total amount of time he could both sit and stand, *combined*, was no more than 2 hours. (R. at 172). This is consistent with the plaintiff's July 16, 2010 testimony in front of the ALJ. (R. at 45.) Any difference in the form of those responses is a result of the fact that his answer in 2010 related to the total amount of time he was able to stand/walk "per day" (R. at 172), while his testimony in front of the ALJ related to how long the plaintiff could stand at one time (R. at 45). At the hearing he stated that he could sit for an hour each day and that he could stand in three to five minute intervals but over the course of an eight hour day, very little. *Id.* Even conservatively, this places the combined elapsed time performing the two functions at

somewhere between an hour and two hours, essentially identical to the January 2010 representation.

The ALJ seems to have misstated other portions of the plaintiff's hearing testimony. For example, the ALJ stated, "The claimant acknowledged that he can lift twenty pounds and that he is able to perform household chores, grocery shop, and handle finances." (R. at 18.) The ALJ further stated that "[h]e uses a riding mower to mow grass and does some small woodworking projects such as working on some trim for his house." *Id.* It appears, however, that the plaintiff testified that he could lift twenty pounds if he was careful, but that the act caused an increase in pain and therefore he tried not to do it. (R. at 44.) Additionally, although he testified that he did household chores, the plaintiff stated that he had to take breaks and that chores, such as loading dishes and washing clothes, required him to be on his knees because he could not bend over. (R. at 48, 52.) In regards to the ALJ's statement that the plaintiff does woodworking projects, the plaintiff actually testified, "Well, I don't have any current projects." (R. at 56.) When asked by the ALJ about woodworking, the plaintiff stated, "I've had a couple pieces of trim I need to put up in the house and I was able to do that but that's, you know, maybe doing it two hours a day and stopping." *Id.* With respect to testimony about mowing his lawn, the ALJ failed to acknowledge that the plaintiff testified he did this in 15-20 minute increments before having to take a break and that it took him several days to complete. (R. at 54.)

The ALJ's credibility determination was reasonably attempted. It, however, appears to contain fairly plain overstatements of the plaintiff's ability or, in the least, incomplete ones. Combined with the ALJ's obligation to now review certain objective findings on remand, the Court would recommend that the credibility analysis be reopened, as well.

11

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence.  It is therefore RECOMMENDED, for the foregoing reasons, that the Commissioner's decision be reversed and remanded to the Commissioner under sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above.  See *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

s/BRUCE H. HENDRICKS<br>
UNITED STATES MAGISTRATE JUDGE

May 23, 2013
Charleston, South Carolina